IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARRY A. MAZAHERI | : | CIVIL ACTION |
| v. | : | |
| PRUDENTIAL INSURANCE COMPANY OF AMERICA | : | NO. 06-cv-00309 |

FILED
DEC 17 2007
MICHAEL E. KUNZ, Clerk
By_________Dep. Clerk

**MEMORANDUM RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**Baylson, J.**

**December 17, 2007**

Harry A. Mazaheri ("Plaintiff," "Mazaheri") seeks an award of disability income benefits pursuant to an insurance policy underwritten by Prudential Insurance Company of America ("Defendant," "Prudential"). Presently before this Court are parties' Cross-Motions for Summary Judgment. For the following reasons, both parties' motions for summary judgment are denied.

## I. Background

### A. Factual Background

Plaintiff was a senior executive at Bank One Corporation[1] where he earned a salary of $146,955. Pl.'s Resp. ¶ 43, Pru 1062. Defendant issued to Bank One Corporation a long-term disability insurance plan ("the Plan"), which Plaintiff purchased through Bank One. At no cost to employees, the Plan provided basic long-term disability coverage equal to 50% of an employee's annual benefit pay. Plaintiff elected to purchase optional long-term disability coverage in the amount of 70% of his annual benefit pay. Compl. ¶¶ 5-8, Def.'s Mot. ¶ 8, Pru

[1] Bank One is now JP Morgan Chase & Co.

0768-0769.

The relevant language in the Plan is as follows. In a Section entitled "How Does Prudential Define Disability?," the Plan reads:

> You are disabled when Prudential determines that: you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and you have a 20% or more loss in your indexed monthly earnings due to that sickness or injury. After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience . . . . We may require you to be examined by doctors, other medical practitioners or vocational experts of our choice. Prudential will pay for these examinations. We can require examinations as often as it is reasonable to do so. We may also require you to be interviewed by an authorized Prudential Representative. Refusal to be examined or interviewed may result in denial or termination of your claim. Pru 0011. (emphasis omitted).

In a later section entitled "Long-Term Disability Coverage: What Information Is Needed as Proof of Your Claim?," the Plan reads:

> We may request that you send proof of continuing disability, satisfactory to Prudential, indicating that you are under the regular care of a doctor. This proof, provided at your expense, must be received within 30 days of a request by us. In some cases, you will be required to give Prudential authorization to obtain additional medical information, and to provide non-medical information as part of your proof of claim, or proof of continuing disability. Prudential will deny your claim or stop sending you payments if the appropriate information is not submitted. Pru 0023-0024.

Plaintiff had separate surgeries on his left and right hip prior to February 2002. He was actively employed at Bank One (or its successor entities) until February 18, 2002, at which time he stopped working due to osteoarthritis. Compl. ¶¶ 20, 27, Pru 0408. Under the Plan, Defendant began paying Plaintiff long-term disability benefits on August 19, 2002. Compl. ¶ 21, Def.'s Mot. ¶ 7.

On November 21, 2002, Defendant sent notification ("the November 2002 letter") to

Plaintiff that his benefits would end on January 1, 2003, as Prudential "anticipate[d] [Plaintiff] would be capable of returning to work full time" before that date. Pru 00540-0542. Plaintiff appealed the denial of benefits on May 22, 2003. Pru 0538. As a result of that appeal, Defendant granted Plaintiff benefits retroactively to the original cancellation date. Pru 0519-0520.

On June 10, 2004, Defendant again sent notification ("the June 2004 letter") to Plaintiff that his benefits would end on August 19, 2004, determining that Plaintiff's "medical conditions would not prevent him from performing the duties of any gainful occupation for which he is reasonably fitted by education, training or experience." Pru 0463-0466. Plaintiff appealed the denial of benefits. Pru 0454, 0458. As a result of this appeal, Defendant granted benefits retroactively to the second cancellation date. Pru 0452-0453.

On April 26, 2005, Defendant sent a letter ("the April 2005 letter") to Plaintiff for a third time, telling him his benefits would end on May 1, 2005. Pru 0407-412. Prudential stated it based this conclusion on a number of different factors. Prudential reasoned that two different doctors - Dr. Simonelli and Dr. Hungerford - had found Plaintiff to ambulate normally and have normal gait. Prudential investigated Plaintiff's activities through internet research, and found Plaintiff to have connections with several Lacrosse teams and associations. Id.

Furthermore, Prudential reviewed Plaintiff's transferability of skills based on information from a Vocational Assessment performed by Anita Hubley and an internal employability review. Both parties admit that the Vocational Assessment is flawed. Def.'s Mot. ¶¶ 43-44, Pl.'s Resp. ¶ ¶ 43-44. First, Ms. Hubley evaluated Plaintiff's occupational ability based on the mistaken fact that Plaintiff's salary was $325,000 per year, instead of his actual salary of $146,955. Pru 0594. Second, Ms. Hubley then determined, based on Mazaheri's physical capabilities and transferable

skills, whether Mazaheri had at least 60% earning replacement power instead of the 70% figure she should have employed. Pru 0594. Ms. Hubley determined that Plaintiff had a potential residual earning power of $61,375. Pru 0597. While the April 2005 letter recognizes Ms. Hubley's "misunderstanding" of Mazaheri's gainful wages, Prudential concluded that the initial vocational evaluation had identified several occupations for which Mazaheri was capable and for which he was qualified. Pru 0409.

Based on all of these factors, Prudential concluded that Plaintiff's "lack of intensity and frequency of treatment [suggest] his condition had stabilized" and that Plaintiff possessed "the ability to perform sedentary to light duty work with some travel." Pru 0410. Plaintiff appealed this decision via facsimile on October 24, 2005. On appeal, Plaintiff stated that he was experiencing continued pain after his surgeries, that he requires a job with flexible hours, no travel and the ability to work from home and that he questioned the validity of the resources used in the vocational analysis conducted by Prudential. Pru 0057. In support of his appeal, Plaintiff submitted an affidavit stating his daily activities, his resume, and medical records from four different doctors. Pru 0057.

In the Plan, Prudential states that its Appeals Unit will make a determination of an applicant's claim within 45 days of the receipt of the appeal request. It further states that if an extension is needed beyond the 45 days, Prudential will provide the claimant with a notice of extension, the reason for the extension and the date that the Prudential Appeals Unit expects to render a decision. Pru 0046. Plaintiff filed an appeal on October 24, 2005. Forty-five days after this date was December 8, 2005. Prudential admits that it did not decide Mazaheri's appeal in this 45-day period, nor did it provide Mazaheri with any written notification or reason for the

delay. Pl.'s Mot., Ex. C, ¶ 1.

On January 24, 2006, Plaintiff filed his Complaint before this Court. One week later, on January 30, 2006, Prudential denied Plaintiff's appeal. Pru 0056. In its denial, Prudential stated that it had received Plaintiff's medical records and determined that "documentation does not support a physical impairment that would preclude Mr. Mazaheri from performing the duties of any gainful occupation." Pru 0057. Prudential concluded that Plaintiff's complaints about his pain were "out of proportion to any objective findings" and that following surgical intervention, Plaintiff would be expected to have "minimal to no complaints." Pru 0058. Prudential concluded that it had already identified gainful occupations within Plaintiff's work capacity. Pru 0059. For all of these reasons, it denied his appeal.

### B. Procedural Background

Plaintiff filed a Complaint (Doc. No. 1) seeking an award of disability income benefits pursuant to an insurance policy underwritten by Defendant. Defendant filed a Motion for Summary Judgment (Doc. No. 40). Plaintiff filed a Response (Doc. No. 44, 45) to Defendant's Motion for Summary Judgment. Plaintiff filed a Motion for Summary Judgment, Pre-Judgment Interest and Attorneys' Fees (Doc. No. 42, 43). Defendant filed a Response (Doc. No. 46) to Plaintiff's Motion for Summary Judgment. Plaintiff filed a Reply (Doc. No. 48) to Defendant's Response.

## II. Contentions of the Parties

### A. Defendant's Motion for Summary Judgment

In its Motion for Summary Judgment, Prudential claims that the language in its LTD plan explicitly grants Prudential discretionary authority to determine eligibility for benefits, and as

such, should be reviewed under the arbitrary and capricious standard. Prudential argues that none of its decisions to terminate Mazaheri's initial LTD benefits was arbitrary or capricious. Prudential contends that it was diligent in evaluating Plaintiff's claim and medical records. Prudential states it was fair and thorough throughout the multiple evaluations of Mazaheri's case, and that it based its final decision to terminate his LTD benefits on medical records, independent investigation into Plaintiff's activities, and the vocational analysis.

In his Response, Plaintiff contends that the standard of review should be de novo, as the Plan did not provide Prudential with any discretion and consequently de novo review is appropriate. In the alternative, if the Plan did grant Prudential discretion, Plaintiff contends that Prudential failed to exercise its discretion in a timely manner, so de novo review is appropriate. Plaintiff further contends that if the Court determines that the arbitrary and capricious standard of review is applicable, Plaintiff is entitled to a heightened arbitrary and capricious standard, as there is a conflict of interest on the part of Prudential as the plan funder and administrator. Plaintiff argues that Prudential's denial of his benefits was based on "bogus 'facts' gathered through inadequate investigation [and] faulty reasoning." Pl.'s Resp. at 3.

B.   Plaintiff's Motion for Summary Judgment

In his Motion for Summary Judgment, Mazaheri argues that the April 2005 letter was based on "false data and faulty reasoning." Pl's Mot. ¶ 3. He further argues that the Plan did not grant Prudential any discretion in determining disability claims. Pl's Mot. ¶ 14. In the alternative, even if the Plan did grant Prudential discretion, Mazaheri argues that Prudential failed to exercise this discretion in a timely manner, and thus he is entitled to de novo review before this Court. Pl.'s Mot. ¶ 15. Plaintiff further argues that if the Court does not apply a de

novo review, it should apply a heightened arbitrary and capricious standard of review because the Plan grants discretionary authority to its administrator and presents a conflict of interest. Pl's Mot. ¶ 25.

In its Response, Prudential contends that Mazaheri failed to show that de novo review is appropriate in the present case. Prudential further argues that Mazaheri failed to show Prudential's determination to discontinue Plaintiff's benefits to be arbitrary or capricious. Even if there is substantial evidence that would support a different result, Prudential contends that its determination is supported by substantial evidence in the record and thus should be upheld.

## III. Legal Standard

### A. Jurisdiction

This Court has jurisdiction over this matter pursuant to Section 502(e)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

### B. Standard of Review

#### *1. Summary Judgment*

The standards by which a court decides a summary judgment motion do not change when the parties file cross-motions. Southeastern Pa. Transit Auth. v. Pennsylvania Pub. Util. Comm'n, 826 F. Supp. 1506, 1512 (E.D. Pa. 1993). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

2.  *ERISA Standard of Review*

When an ERISA plan beneficiary sues to recover benefits under an insurance plan, the standard of review depends, in part, on whether the plan allows for the exercise of discretion by the plan administrator. Ordinarily, courts give deference to an administrator's exercise of discretion when discretion is provided by the plan. Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 383 (3d Cir. 2000) (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115

(1989). The Supreme Court, however, has counseled that courts must be wary when an administrator making discretionary decisions does so under a conflict of interest. Firestone, 489 U.S. at 113.

For the evaluation of an administrator's discretionary decisions, the Court of Appeals for the Third Circuit has adopted a "sliding scale" standard of review, calibrating the level of deference afforded an administrator with the intensity of the conflict of interest present in the decision-making process. Pinto, supra, at 392. "To apply the approach, courts first consider the evidence that the administrator acted from an improper motive and heighten their level of scrutiny accordingly. Second, they review the merits of the decision and the evidence of impropriety together to determine whether the administrator properly exercised the discretion accorded it. Post v. Hartford Ins. Co., 501 F.3d 154, 161-62 (3d Cir. 2007) (citations omitted).

Structural factors as well as procedural factors are considered in this analysis. Structural factors that raise the specter of a conflict include: 1) the relative sophistication of the parties; 2) the information accessible to the beneficiary; 3) the financial arrangement between the employer and the administrator; 4) the financial status of the administrator; and 5) the administrator's claim evaluation process, i.e. whether the administrator uses an independent body to evaluate claims. Id. at 163. In particular, concern is heightened when a plan is funded and administered by an outside insurer, instead of an employer, since employers have at least some self-interest in employee satisfaction with the plan. Id. at 163-64. Furthermore, concern is raised when the claimant is no longer an employee because the complaints of a former employee about an outside administrator are less likely to adversely affect the administrator's relationship with the employer. Id. These sorts of "structural conflicts of interest warrant more searching review, but

in the absence of evidence that bias infected the particular decision at issue, we defer to an administrator's reasonable and carefully considered conclusions." Id. at 164.

To determine whether "bias infected the particular decision," courts determine whether any procedural defects were present in the administrative review of the claim. Irregularities that heighten the standard of review include: 1) reversal of the administrator's decision without additional medical evidence, id. (citing Pinto, supra, at 393); 2) self-serving selectivity in the use and interpretation of physicians' reports, id. (citing Pinto, supra, at 393); 3) disregarding staff recommendations that benefits be awarded, id. (citing Pinto, supra, at 394); 4) requesting a medical examination when all of the evidence indicates disability, id. (citing Kosiba v. Merck & Co., 384 F.3d 58, 67 (3d Cir. 2004); and 5) failure to afford a meaningful review or appeal, in particular by failing to take action on a claim or appeal until after the deadline set by the plan, Gritzer v. CBS, Inc. 275 F.3d 291, 295-96 (3d Cir. 2002).

When there is little evidence of a conflict of interest or procedural defects are few and minor, courts apply a deferential arbitrary and capricious standard of review. Post v. Hartford, supra, at 165. When there is substantial evidence of a conflict or when procedural defects are numerous, significant or continuing, courts apply a more searching standard. Id. The touchstone of the inquiry is "whether the administrator appropriately exercised its discretion." Id. at 161-62.

## IV. Discussion

### A. Standard of Review

As previously stated in a Memorandum (Doc. No. 26) dated February 15, 2007, the Court noted that there may be a conflict of interest and would thus have to use the Pinto sliding scale to determine what form of arbitrary and capricious standard of review should apply if Prudential is

liable. Applying the factors enumerated in Post v. Hartford, the Court concludes that there is a structural conflict of interest, as well as procedural irregularities suggesting that that conflict may have influenced Prudential's decision to deny Marazheri's benefits. Therefore, the Court applies a heightened arbitrary and capricious standard of review.

    *1.    Structural Factors*

A number of the structural factors cited by the Court of Appeals in Post and Pinto as justifying a heightened standard of review are present in this case. First, Prudential is an outside insurer that both funds and administers Mazaheri's plan. Def.'s Mot. ¶ 101. As a result, Prudential does not have the self-interest that an employer would have in ensuring employee satisfaction in handling employees' claims.

Second, Mazaheri no longer works for Bank One due to his disability. Def.'s Mot. ¶ 15, Pl.'s Resp. at 23-24. As a result, any complaints Mazaheri might have made about Prudential's action to Bank One would be less likely to have been successful and less likely to affect Prudential's relationship with Bank One.

Finally, Prudential's evaluations of Mazaheri's claim (as well as the claims of others) is conducted largely by what seem to be in-house Prudential employees. In the April 2005 letter stating Plaintiff's benefits would be terminated, the Prudential Disability Consultant referenced an "internal employability review," a review of Plaintiff's claim by "our medical staff," and the completion of "an activities check and internet research." Pru 0408-10.

For all of these reasons, the potential for a conflict of interest in Prudential's determination of Mazaheri's claim merits a heightened standard of review.

    *2.    Procedural Factors*

There are also procedural irregularities suggesting that this conflict influenced Prudential's final determination of Mazaheri's claim. Several of these types of procedural irregularities were stated by the Court of Appeals in Post as raising the standard of review. Id. at 164-65.

First, in its review of Mazaheri's claim, Prudential made selective and self-serving use of some of the doctors' statements. In the April 2005 letter, Prudential noted that according to Dr. Simonelli, Mazaheri was in "no acute distress," "ambulated normally without an assistive device" and noted that the doctor suggested Mazaheri should "modify activity associated with symptoms after prolonged standing, walking or sitting." Pru 0408. Prudential failed to mention, however, that that same report notes that Mazaheri "develops painful stiffness of his hips with prolonged sitting or walking for more than 15-20 minutes at a time," and has "soreness over the lateral aspects of his hips. Pru 0525. Moreover, Prudential also failed to note that in the same sentence Dr. Simonelli advised Plaintiff to avoid prolonged standing and walking, Dr. Simonelli also advised Plaintiff to "work[] at his own pace." Pru 0527. While Prudential has discretion to evaluate a person's disability claim, Prudential's purported reliance on a doctor's report is undermined by the omission of the doctor's statement concerning Plaintiff's very ability to work.

Second, Prudential failed to afford Mazaheri a meaningful appeal. Prudential has discretion in evaluating the cases of claimants and sets its own timeline in the evaluation process. In the present case, however, rather than exercise its discretion and make a timely evaluation of Mazaheri's appeal, Prudential did not follow its own guidelines. The Plan specifically states that the Prudential Appeals Unit shall make a determination on every claim "within 45 days of [a claimant's] appeal request." Pru 0046. It further states that "[a] written notice of extension, the

reason for the extension and the date that the Prudential Appeals Review Unit expects to render a decision shall be furnished to you within the initial 45-day period." Id. Mazaheri appealed on October 24, 2005. Thus, according to Prudential's directions, Mazaheri should have received a determination by December 8, 2005. Mazaheri did not receive a determination by this date, however, and Prudential has acknowledged that it did not send any notice or reason for an extension to Plaintiff. Pl.'s Mot., Ex. C, ¶ 1. It was not until January 30, 2006 - one week after Mazaheri had filed his Complaint in this Court - that Prudential sent Mazaheri a letter denying his appeal. Failure to take action on an appeal until after the deadline set by the plan has been identified by the Court of Appeals as an irregularity that heightens the standard of review. Gritzer, supra, at 295-96. The circumstantial evidence may allow a conclusion that the appeal was denied because Mazaheri filed this suit.

Third, Prudential relied on questionable data in evaluating Mazaheri's claim. In its April 2005 letter, Prudential relies on a Vocational Assessment/TSA performed by Anita Hubley. Ms. Hubley used an incorrect figure to calculate Mazaheri's gainful wage. She calculated Plaintiff's occupational ability based on the mistaken fact that Plaintiff's salary was $325,000 per year, instead of his actual salary of $146,955. Pru 0594. Ms. Hubley then determined, based on Mazaheri's physical capabilities and transferable skills, whether Mazaheri had at least 60% earning replacement power instead of the 70% figure she should have used. Pru 0594. While it acknowledges Ms. Hubley's mistakes in the letter, Prudential still relies on much of the rest of Ms. Hubley's analysis.

It is to some extent within Prudential's discretion to rely on the rest of Ms. Hubley's analysis. Although her mistaken reliance on incorrect data is significant, Ms. Hubley's mistakes

do not make her entire vocational analysis irrelevant or undependable. But here, again, Prudential seems to "pick and choose" the information upon which it wishes to rely. While Prudential restates many of Ms. Hubley's findings in its letter, Prudential fails to include her determination that Plaintiff had a potential residual earning power of $61,375. Pru 0597. All of the jobs Prudential lists in its April 2005 letter have median wages far above this figure. As Ms. Hubley's calculation of Plaintiff's potential residual earning power was not based on any of her mistaken figures, and was based on the analysis that Prudential cited in its letter, it strikes this Court as odd that Prudential would omit this calculation. Moreover, while Prudential attempts to correct Ms. Hubley's mistaken calculations, it only does so halfway. While Prudential quotes Mazaheri's correct salary ($146,955), Prudential calculates a gainful wages target at $88,173 per year, which is 60% of his salary. This is the same mistake Ms. Hubley made. As Mazaheri signed up for Option II under the Plan, which would calculate his gainful wages at 70% of his salary, this number should have been $102,868.50.

    Because there are structural factors that suggest a conflict of interest, plus procedural irregularities suggesting that the conflict influenced Prudential's decision-making, the Court will apply a heightened standard of arbitrary and capricious review to Prudential's decision to deny long-term disability benefits to Plaintiff. Heightened arbitrary and capricious review "requires a determination 'whether there was a reasonable basis for [the administrator's] decision, based upon the facts as known to the administrator at the time the decision was made.' Any deference we might ordinarily afford this decision will be tempered due to [the administrator's] conflict of interest." Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Employee Health & Welfare Plan, 298 F.3d 191, 199-200 (3d Cir. 2002) (quoting Levinson v. Reliance Standard Life Ins. Co., 245

F.3d 1321, 1326 (11th Cir. 2001)).

B. Defendant's Motion for Summary Judgment

Prudential's motion for summary judgment will be denied because under the heightened standard of review, Prudential's denial of long-term disability benefits was arbitrary and capricious. Prudential's self-serving selectivity in its reliance on doctors' reports and the vocational analysis by Ms. Hubley are both indicators that Prudential was abusing its discretion. In its April 2005 letter, Prudential omitted a doctor's statement about Plaintiff's ability to work, and also omitted the vocational expert's conclusion as to Plaintiff's residual earning power. The omission of these statements, combined with the inclusion of many other statements and analysis by these same experts, is inconsistent and self-serving on the part of Prudential. Moreover, Prudential's disregard for its own appeals process shows this Court that Prudential was acting outside of its discretion. For these reasons, the Court concludes that Prudential's decision was arbitrary and capricious, and its motion for summary judgment will be denied.

C. Plaintiff's Motion for Summary Judgment

While Prudential's review of Mazaheri's claim for long-term disability benefits was arbitrary and capricious, there is not enough evidence in the Record for this Court to grant Plaintiff's motion for summary judgment. Finding for the Plaintiff would mean a reinstatement of his disability benefits. While Prudential did not follow its own policies regarding Plaintiff's appeal and acted outside of its discretion, it is unclear to this Court that Plaintiff would qualify for long-term disability benefits. Based on the record, he may qualify for such benefits, but he may not. There remains a genuine issue of material fact as to whether Plaintiff qualifies as disabled under the Plan issued by Prudential. As such, Plaintiff's motion for summary judgment

will be denied.

V.    Conclusion

For the reasons set forth above, Prudential's Motion for Summary Judgment will be denied. Mazaheri's Motion for Summary Judgment will also be denied. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARRY A. MAZAHERI | : | CIVIL ACTION |
| v. | : | |
| PRUDENTIAL INSURANCE COMPANY OF AMERICA | : | NO. 06-cv-00309 |

**ORDER**

AND NOW, this 17th day of December, 2007, upon consideration of Defendant Prudential's Motion for Summary Judgment and Plaintiff Harry A. Mazaheri's Motion for Summary Judgment, based on the accompanying memorandum, it is hereby ORDERED that:

1) Defendant's Motion for Summary Judgment (Doc. No. 40) is DENIED;

2) Plaintiff's Motion for Summary Judgment (Doc. No. 43) is DENIED;

3) Counsel are requested to review the following cases for purposes of a telephone conference:

- Gritzer v. CBS, Inc., 275 F.3d 291 (3d Cir. 2002)
- Post v. Hartford, 501 F.3d 154 (3d Cir. 2007)
- Tylwalk v. Prudential Ins. Co., 2007 WL 4335671 (3d Cir. 2007)
- Orr v. Metropolitan Life Ins. Co., Inc., 2007 WL 2702929 (M.D.Pa. 2007)

Counsel should consult these cases and are encouraged to discuss among themselves what should take place moving forward.

4) The Court will have a telephone conference with counsel on December 26th, 2007 at 2pm.

BY THE COURT:

Michael M. Baylson, U.S.D.J.

O:\Clare\Mazaheri v. Prudential 06-0309\06-309 Mazaheri Memo.wpd

fax

cc Goldstein
Dryer